IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODERICK JOHNSON, | : | CIVIL ACTION |
| | : | NO. 04-2835 |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| LOUIS FOLINO ET AL., | : | |
| | : | |
| Respondents. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    December 10, 2007

        Before the Court is a motion to compel the FBI to
produce an unredacted copy of a memorandum previously produced to
Petitioner in redacted form.  The FBI opposes the motion,
arguing, first, that this Court lacks jurisdiction over the
dispute and, second, that even if the Court can decide the
matter, it should not grant the motion.  The Court concludes that
it does have jurisdiction to decide the motion and that the
motion should be denied.


**I.   BACKGROUND**

        Roderick Johnson was convicted of the first-degree
murder of Jose Bernard Martinez in the Berks County Court of
Common Pleas and sentenced to life imprisonment.  The testimony
of George Robles played an important role in Johnson's
conviction.  Johnson's petition for habeas corpus alleges that at
least one of the police officers investigating the Martinez

murder had a corrupt relationship with Robles, who was heavily involved in illegal drug activities.  Johnson claims that Robles testified against him because of Robles' relationship with the police.  In essence, he wished to guarantee preferential treatment for himself and his drug gang and he sought to do so by offering the police evidence against Johnson.

The habeas petition claims that, on July 14, 2003, Robles made statements indicating that the Commonwealth possessed exculpatory evidence that had not been previously produced to Petitioner.  This evidence is as follows: Robles was in a group called the Nyte Life Clique ("NLC"), in which he was known as "Gambino."  The NLC enabled Robles to "run the streets for a number of years."  Robles remembered smoking marijuana with Criminal Investigator ("CI") Angel Cabrera in the presence of CI Bruce Dietrich.  Robles had an ongoing corrupt relationship with members of the Reading police force and he had a corrupt motive to assist the police by testifying against Johnson.

Johnson's PCRA petition was accompanied by affidavits from George Robles, Edwin Ruiz (a relative of Robles), and two defense investigators who claim to have been threatened by Robles.  Johnson also submitted the affidavit of Joseph Thornton, a defense investigator who interviewed Berks County Chief County Detective Joseph Stajkowski.  Stajkowski provided support for the assertion that Detectives Cabrera and Dietrich were involved in

drug trafficking; Johnson argued that Stajkowski's statement corroborated Johnson's claim that Robles had a corrupt relationship with the police.

## II.  JOHNSON'S MOTION TO COMPEL

Johnson moves to compel the FBI's compliance with a subpoena issued on January 31, 2007.  The subpoena requested FBI records related to George Robles or documenting investigations or complaints about Bruce Dietrich and other named investigators from the Reading Police Department.  See Ex. 10, Pet.'s Mot. to Compel (doc. no. 68).  In response to the subpoena, the FBI produced two documents, only one of which is in dispute now.  It is a memorandum dated January 2, 1990; it discusses a police investigation involving one or more Reading police officers.  The document was redacted to eliminate the names and identifying information of individuals who were not named in Johnson's subpoena.  See Ex. 11, Pet.'s Mot. to Compel.

Petitioner moves to compel production of an unredacted copy of the January 2, 1990 memorandum.  In response, the FBI raises two objections.  First, the FBI argues that this Court lacks jurisdiction to decide this discovery dispute because petitioner failed to bring a separate action seeking review of a final agency decision under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq.  Second, the FBI argues that,

even if this Court may decide the instant dispute, Johnson has
failed to establish that his need for an unredacted copy of the
memorandum outweighs the privacy concerns raised by the FBI.


    A.    Jurisdiction

        The Court has jurisdiction to determine this discovery
dispute; petitioner need not file an ancillary proceeding under
the APA.

        Court of appeals that have considered the issue agree
that sovereign immunity does not prevent the enforcement of a
subpoena issued by a federal court against the federal government
or its agencies.[1]  To the contrary, courts have concluded that

---

[1]    The FBI cites U.S. ex rel. Touhy v. Ragen, 340 U.S. 462
(1951), in support of its assertion of immunity from compulsion
to testify.  However, Touhy does not provide the asserted
immunity.  In Touhy, the Court examined the validity of a Justice
Department regulation that provided that no DOJ employee would
produce documents in response to a subpoena without prior
approval from the Attorney General.  The Court held that the
regulation was a valid exercise of the Attorney General's power,
pursuant to 5 U.S.C. § 22, to "prescribe regulations not
inconsistent with the law for 'the custody, use and preservation
of the records, papers and property appertaining to' the
Department of Justice."  340 U.S. at 469 (citing the Housekeeping
Statute, 5 U.S.C. § 22).  Justice Frankfurter's concurrence
specifically emphasized that the Court's decision did not reach
the issue of whether the Attorney General himself might be immune
from an order compelling the production of information.  Instead
the Court held only that an employee, faced with the choice of
either disobeying a court order to produce a document or
disobeying his superior's order to withhold the document, would
not be held in contempt if he opted to obey his superior.  See
U.S. v. Gen. Elec. Co., 197 F.3d 592, 595-96 (2d Cir. 1999)
(rejecting the exact argument made by the FBI regarding the
meaning of Touhy; holding that the Touhy Court "specifically

-4-

the APA waives sovereign immunity when the relief sought from the federal government is other than monetary relief, for example, when the relief sought is the production of information.  <u>See</u> <u>Linder v. Calero-Portocarrero</u>, 251 F.3d 178, 181 (D.C. Cir. 2001) ("sovereign immunity is not a defense to a third-party subpoena"); <u>U.S. EPA v. Gen. Elec.</u>, 197 F.3d 592 (2d Cir. 1999) (same); <u>COMSAT Corp. v. Nat'l Sci. Found.</u>, 190 F.3d 269, 274 (4th Cir. 1999) (same); <u>Exxon Shipping Co. v. U.S. Dep't of Interior</u>, 34 F.3d 774 (9th Cir. 1994) (same); <u>Moore v. Armour Pharm. Co.</u>, 927 F.2d 1194 (11th Cir. 1991) (exercising jurisdiction over challenge to cabinet department's refusal to produce documents requested by third-party subpoena).

Courts further agree that a motion to compel or motion to quash provides an appropriate context for the consideration of a discovery dispute arising in a federal case in which the Government is not a party.  In <u>General Electric</u>, the Second Circuit held that a party seeking to enforce a subpoena against a non-party federal agency may do so via motion to compel.  197 F.3d at 598-99.  "[A] separate action . . . does not provide the exclusive opportunity for judicial review."  <u>Id.</u>  In other words, the Second Circuit explicitly rejected the FBI's argument that

declined to consider the question of whether the appropriate decisionmaker could refuse altogether to produce the subpoenaed documents); <u>Moore v. Armour Pharm. Co.</u>, 927 F.2d 1194, 1197 (9th Cir. 1994) (interpreting <u>Touhy</u> as allowing department head to regulate employees' production of documents).

Johnson must file a separate action.  Other courts, while not explicitly addressing the question of whether a party must file a separate action, have proceeded to adjudicate discovery disputes between a party and a non-party government entity without requiring the party to file a separate action.  See, e.g., Moore, 927 F.2d 1194; Linder, 251 F.3d 178; Miskiel v. Equitable Life Assurance Soc'y, 1999 WL 95998 (E.D. Pa. Feb. 24, 1999).

        The FBI relies on Davis Enterprises v. U.S. EPA, 877 F.2d 1181 (3d Cir. 1989), for the proposition that Johnson must bring a separate action to challenge the FBI's refusal to comply with his subpoena.  However, the FBI's reliance on Davis is misplaced.  In Davis, private homeowners filed a class action in Pennsylvania state court against Davis Enterprises and other corporations for damage caused to the plaintiffs' homes by a gasoline spill.  The defendants sought testimony from an EPA employee regarding the results of tests conducted by the EPA after the spill.  When the EPA refused to allow its employee to be deposed in the state court matter, the defendants filed suit against the EPA in federal court, alleging that the refusal to allow the deposition was an abuse of discretion.  The Eastern District of Pennsylvania and the Third Circuit reviewed the discovery dispute in the context of the separate action, ancillary to the suit for which discovery was sought.  However, this was necessary because the discovery request originated in

-6-

state court; without a separate action, the federal courts had no involvement in or jurisdiction over the state court discovery dispute.

Because <u>Davis</u> arose out of a state court litigation, it has no bearing on whether a separate action is necessary to review a discovery dispute arising in a federal case.

    B.    <u>Standard of Review</u>

The question of what standard a court should apply in reviewing an agency's refusal to comply with a subpoena is unsettled.  The Third Circuit has not yet considered the question.  The Fourth and Eleventh Circuits review the agency's decision under the APA's arbitrary and capricious standard because the APA contains the waiver of sovereign immunity that allows review of the decision at all.  <u>COMSAT Corp.</u>, 190 F.3d 269; <u>Moore</u>, 927 F.2d at 1198.  On the other hand, the D.C. and Ninth Circuits conduct an analysis under Federal Rule of Civil Procedure 45, balancing the interests favoring disclosure against the interests asserted against disclosure.  <u>Linder</u>, 251 F.3d at 181-82; <u>Exxon</u>, 34 F.3d at 780.  The Second Circuit initially adopted the arbitrary and capricious standard, but, on reconsideration, vacated its decision and reserved the question for the future.  <u>Gen. Elec.</u>, 212 F.3d at 689-90, <u>amending</u> 197 F.3d 592 (2d Cir. 1999).

The Court need not decide this question today.  As described below in Section II.C., even if the Court adopts the less deferential Rule 45 analysis, the motion to compel will not be granted.

    C.   <u>Merits</u>

The motion to compel will be denied.  Johnson has failed to show that his need for the redacted information is so great as to 1) make the FBI's refusal to release the information arbitrary and capricious or 2) outweigh the legitimate concerns raised by the FBI under a Rule 45 analysis.

Assuming without deciding that a Rule 45 analysis governs, Johnson is not entitled to the redacted information. Rule 45 provides that a court may quash a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or if it "subjects a person to undue burden."  Fed. R. Civ. P. 45(3)(A)(iii), (iv).  The FBI argues that the redacted information is protected by the Privacy Act because it discloses the names and other identifying information of persons unrelated to Johnson's petition.

The Privacy Act provides that "[n]o agency shall disclose any record . . . to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the

record would be . . . pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).  "The Privacy Act . . . does not create a qualified discovery privilege . . . . Nor does the Act create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery."  <u>Laxalt v. McClatchy</u>, 809 F.2d 885, 888 (D.C. Cir. 1987); <u>Weakhee v. Norton</u>, 621 F.2d 1080, 1082 (10th Cir. 1980) (same); <u>Clavir v. U.S.</u>, 84 F.R.D. 612, 614 (S.D.N.Y. 1979) (same); <u>Forrest v. U.S.</u>, 1996 WL 171539, at *2 (E.D. Pa. Apr. 11, 1996) (same).

However, the Privacy Act's protection of certain information is still relevant to a court's exercise of discretion in resolving discovery disputes.  Statutory protections for certain information "reflect a congressional judgment that certain delineated categories of documents may contain sensitive data which warrants a more considered and cautious treatment.  In the context of discovery of government documents in the course of civil litigation, the courts must accord the proper weight to the policies underlying these statutory protections, and . . . compare them with the factors supporting discovery in a particular lawsuit."  <u>Laxalt</u>, 809 F.2d at 889.

The disputed memorandum appears to state that an individual approached Officer Dietrich in an attempt to sell Dietrich cocaine because the would-be seller believed Dietrich to

-9-

be corrupt.  Apparently Dietrich knew the individual from childhood, but described their relationship as solely one of exchanging greetings in public.  At some point, Dietrich agreed to respond favorably if he was approached again; he would try to set up a purchase.  A plausible interpretation of the memo is that Dietrich reported the incident to his superiors as soon as he was approached about buying drugs and that his involvement was part of a legitimate investigation.  George Robles is not mentioned in the memo at all.

It is unlikely that the redacted names are relevant to Johnson's petition.  The basis of Johnson's petition is an allegedly corrupt relationship between Robles and the Reading police officers who investigated Johnson's cases.  However, Robles is not even mentioned in the FBI memo - Johnson offered no reason to believe that the individuals named in the memo had any connection to Robles or would know anything about Robles' relationship with the police.  Johnson's attorneys argued that Johnson should be able to contact the persons named in the memo to determine, for example, why the would-be seller believed Dietrich to be dirty.  However, with no suggestion that the seller knew Robles and nothing in the memo to show that the seller's information about Dietrich had any basis in fact, compelling production of the names in the memo would be indulging Petitioner in a fishing expedition.

The motion to compel will be denied.   An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RODERICK JOHNSON,                    :     CIVIL ACTION
                                     :     NO. 04-2835
          Petitioner,               :
                                     :
     v.                              :
                                     :
JEFFREY BEARD ET AL.,                :
                                     :
          Respondents.              :

**O R D E R**

**AND NOW**, this **10TH** day of **December 2007,** it is hereby

**ORDERED** that Petitioner's motion to compel the FBI's production

of an unredacted copy of the January 2, 1990 memorandum is

**DENIED.**


          **AND IT IS SO ORDERED.**


                    S/Eduardo C. Robreno

               **EDUARDO C. ROBRENO, J.**