IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RODERICK JOHNSON,                    :    CIVIL ACTION
                                     :    NO. 04-2835
        Petitioner,                  :
                                     :
            v.                       :
                                     :
LOUIS FOLINO, et al.,                :
                                     :
        Respondents.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          August 12, 2010


TABLE OF CONTENTS

I.    BACKGROUND...............................................2
II.   PROCEDURAL HISTORY.......................................5
III.  APPLICABLE LAW...........................................7
      A.    Standard of Review................................7
      B.    Ineffective Assistance of Counsel................10
IV.   DISCUSSION..............................................12
      A.    Failure to Request Accomplice Liability Instruction..12
      B.    Failure to Object to Co-Conspirator Hearsay.........20
            1.    Confrontation Clause Violation.............27
            2.    Finding of Prejudice.......................35
      C.    Failure to Object to Admission of "Other Bad Acts"
            Evidence.........................................39
      D.    Cumulative Effect of All Errors..................44
V.    CONCLUSION..............................................45

        Before the Court is Petitioner Roderick Johnson's

("Petitioner") motion for habeas corpus pursuant to 28 U.S.C. §

2254.  Petitioner's original petition asserted five grounds for

relief.  By way of Memorandum Opinion, the Court found that

Petitioner's claim concerning the alleged failure of the

Commonwealth to disclose <u>Brady</u> material was procedurally default and unavailable for review. <u>See</u> <u>Johnson v. Folino</u>, 671 F. Supp. 2d 658 (E.D. Pa. 2009). Petitioner's four remaining claims are ripe for final adjudication.

I.    **BACKGROUND**

        On July 14, 1998, Petitioner, was convicted of first-degree murder and related charges in the Berks County Court of Common Pleas with respect to the November 1, 1996 shooting death of Jose Martinez ("Martinez"). (Petition for Writ of Habeas Corpus ¶ 4.) On July 15, 1998, Petitioner was sentenced to life imprisonment without parole. (<u>Id.</u>) The Commonwealth's case relied heavily on testimony of three witnesses: George Robles ("Robles"), Luz Cintron ("Cintron," Robles' girlfriend) and Mylta Velazquez ("Velazquez," Petitioner's estranged girlfriend). (<u>Id.</u> at ¶¶ 17-21.)

        An abridged summary of the facts supporting Petitioner's conviction is as follows. At approximately 11:15 p.m. on November 1, 1996, Pearl Torres ("Torres") observed two men run across Schuykill Avenue in Reading, Pennsylvania. (Trial Tr. 119, July 9, 1998.) One of the men, later found by the jury to be Petitioner, was carrying a black semi-automatic handgun which he used to shoot the other individual, Martinez. (<u>Id.</u>) After Martinez fell to the ground, Petitioner fired three shots

into Martinez's body, after which Torres saw Petitioner flee the scene.  (Id. at 119, 121-22.)

Shannon Sanders ("Sanders") testified that at the same time on November 1, 1996, she was in the vicinity of the 300 block of Schuykill Avenue in Reading.  (Id. at 228.)  Sanders testified that at this time she heard three gunshots, and immediately after hearing the gunshots she observed an African-American male run by her.  (Id. at 230.)  She testified that the individual was in possession of a semi-automatic handgun.  (Id. at 231-32.)  Sanders testified that when the individual ran by her she heard him exclaim "yo, that motherfucker's dead.  You know what I mean.  I just killed him."  (Id. at 230.) Immediately after the exchange, the male fled the area.  (Id. at 233.)  Sanders testified that she could not identify Petitioner as the individual that she observed during this exchange because she did not get an adequate look at the individual's face.  (Id.)

Robles testified that Petitioner showed up at his residence at 428 Buttonwood Street at approximately midnight on November 1, 1996, and was out of breath when he arrived.  (Id. at 370.)  Robles testified that Petitioner told him that "Yo, I just killed this dude.  I just killed this dude."  (Id. at 372.) Robles testified that Petitioner showed Robles a semi-automatic handgun that Petitioner stated he had just used to shoot someone. (Id. at 372-74.)  Petitioner told Robles that he and Richard

Morales ("Morales") had seen Martinez at a convenience store on Schuykill Avenue, at which point Petitioner questioned Martinez about a drug debt owed to Petitioner's associate, Shawn Bridges. (Id. at 375-79.) Petitioner told Robles that Martinez fled on Schuykill Avenue and that Petitioner and Morales pursued Martinez in a van. (Id. at 376.) When Martinez crossed the intersection of West Elm Street, Petitioner exited the van driven by Morales and chased Martinez on foot. (Id. at 376-77.) Petitioner told Robles that he fired several shots into Martinez's body. (Id. at 376-78.) After recounting the event to Robles, Petitioner left Robles' residence.

Robles testified that shortly after Petitioner's departure, Morales arrived at his residence. (Id. at 378.) Robles testified that Morales told him that he had driven Petitioner in pursuit of Martinez on Schuykill Avenue and that Petitioner shot Martinez. (Id. at 378-80.) Robles testified that Morales also told him that after Petitioner shot Martinez, Morales circled the block and returned to fire another gunshot into Martinez's body to "make sure he did the job right." (Id. at 380.) Cintron was present at Robles' residence at the time of this conversation and testified consistently as to the substance of this conversation.

Cintron testified that one to two days after the shooting incident she entered the residence that she shared with

Robles and Tyhir Biggs ("Biggs") at 428 Buttonwood Street in Reading and overhead a conversation between Petitioner and Biggs. (Id. at 286.)  Cintron testified that she overheard Petitioner tell Biggs that he and Morales had confronted Martinez on Schuykill Avenue and that Martinez became scared and ran away, at which point Petitioner ran after him and shot him.  (Id.) Cintron further testified that she overheard Petitioner tell Biggs that he shot Martinez in the back.  (Id. at 326.)

Velazquez testified that approximately one to two days after the incident, she and Petitioner were watching a news broadcast that showed a story about Martinez's murder.  (Id. at 156, 162-68.)  Velazquez testified that in response to the news story, Petitioner asked her if he could trust her, at which point he told her that he was the one who shot Martinez.  (Id.) Petitioner went on to state to Velazquez that he was a "hitman" and "that's what he does."  (See id. at 158-59, 162-68, 177.)


## II. PROCEDURAL HISTORY[1]

Petitioner filed a direct appeal of his sentence on August 14, 1998.  The Superior Court affirmed the verdict on July 15, 1999, and the Pennsylvania Supreme Court denied Petitioner's

---

[1]    The Court's recitation of the complex and extensive procedural history of Petitioner's case is based upon the comprehensive February 25, 2008 memorandum opinion written by Judge Ludgate of the Court of Common Pleas of Berks County.

allowance of appeal on December 30, 1999.

On December 21, 2000, Petitioner filed his first Petition for Post-Conviction Relief pursuant to 42 Pa.C.S.A. § 9543 ("PCRA") and was denied relief on November 29, 2001. This denial was affirmed by the Superior Court on January 8, 2003, and the Pennsylvania Supreme Court denied Petitioner's further request for relief on March 22, 2004. During the pendency of appeal from his first PCRA petition, Petitioner filed a second PCRA petition on September 12, 2003, which was later refiled on April 13, 2004. Petitioner sought to supplement this second PCRA petition with alleged <u>Brady</u> material, but the Court of Common Pleas refused to grant this request and denied Petitioner's second PCRA petition on September 22, 2004. The Court of Common Pleas held that Petitioner's newly asserted <u>Brady</u> claim was untimely under the PCRA statute and none of the statutory exceptions were applicable. The Superior Court affirmed the denial of this second PCRA petition on September 22, 2005.

During the interim in which Petitioner's first and second PCRA petitions were under review by the Pennsylvania state courts, Petitioner filed the instant habeas petition. Petitioner filed the petition in this matter on June 25, 2004, and the Court has accommodated Petitioner in several instances in staying certain aspects of these proceedings in order to facilitate exhaustion of Petitioner's state court petitions.

On June 19, August 2, and November 16, of 2007, Petitioner filed his third, fourth, and fifth "protective" PCRA petitions, respectively. These petitions were dismissed by the Court of Common Pleas on December 6, 2007, again based upon the untimeliness of the petitions. The Superior Court affirmed this decision on January 22, 2009.

On November 23, 2009, this Court issued an Order and Memorandum finding that Petitioner's claim based on alleged <u>Brady</u> violations was procedurally defaulted and unavailable for review.[2] The Commonwealth concedes that Petitioner's remaining four claims are exhausted and available for review. The Court permitted the parties to submit supplemental briefing as to Petitioner's remaining claims for ineffective assistance of counsel, which are now ripe for decision.

## III. APPLICABLE LAW

A. <u>Standard of Review</u>

Federal courts are vested with jurisdiction over

_____

[2] On November 23, 2009, the Court addressed Petitioner's <u>Brady</u> claim in the context of a motion by Petitioner for additional discovery as to the <u>Brady</u> claim. <u>Johnson</u>, 671 F. Supp. 2d at 669-72. In that Memorandum Opinion, the Court determined that Petitioner's <u>Brady</u> claim has been procedurally defaulted and was unavailable for review, and thus Petitioner's motion for additional discovery was moot. <u>See id.</u> As Petitioner's <u>Brady</u> claim is unavailable for review, it is not addressed in this Memorandum and will be dismissed along with the remaining claims asserted in Petitioner's habeas petition.

petitions for writs of habeas corpus for a prisoner "in custody pursuant to the judgment of a State court" in violation of the United States Constitution.  28 U.S.C. § 2254(a).  Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") a claim that is adjudicated on the merits in state court is to be afforded deference by a reviewing federal court. See 28 U.S.C. § 2254(d).[3]  Pursuant to 28 U.S.C. § 2254, as amended by the AEDPA, the determinations of state courts are entitled to considerable deference from federal courts.  Duncan v. Morton, 256 F.3d 189, 196 (3d. Cir. 2001). Section 2254(d) precludes federal habeas relief as to:

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an

---

[3]    28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court interpreted these two

prongs in Williams v. Taylor, and stated the following:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing
> legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

529 U.S. 362, 412-13 (2000).

In order to determine whether a state court's

application of federal law is "unreasonable," a court must apply

an objective standard, such that the relevant application "may be

incorrect but still not unreasonable." Duncan, 256 F.3d at 196

(citing Williams, 529 U.S. at 409-10). The test is whether the

state court decision "resulted in an outcome that cannot

reasonably be justified [under existing Supreme Court

precedent]." Matteo v. Superintendent, SCI Albion, 171 F.3d 877,

891 (3d Cir. 1999) (en banc). A petitioner is required to do

more than simply show that his proposed interpretation of the

relevant precedent is "more plausible;" rather it is necessary to

demonstrate that the precedent "requires a contrary outcome."

Id. A petitioner is not entitled to habeas relief "solely on the

basis of simple disagreement with a reasonable state court

interpretation of the applicable precedent." Id.

With regard to the factual findings of a state court, courts are instructed to apply a presumption of correctness which can only be overcome by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1);[4] Duncan, 256 F.3d at 196. This presumption applies equally to factual determinations rendered by state trial and appellate courts. Duncan, 256 F.3d at 196. This presumption of correctness has been extended to implicit factual findings of state courts as well. See Campbell v. Vaughn, 209 F.3d 280, 285-86 (3d Cir. 2000) (noting that the Supreme Court interpreted this statute and "held that an implicit finding of fact is tantamount to an express one, such that deference is due to either determination") (citing Parke v. Raley, 506 U.S. 20, 35 (1992)).

B.    Ineffective Assistance of Counsel

Determination of ineffective assistance of counsel claims are governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Shelton v.

---

[4]    The text of section 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Id.

Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)).  In the context of the AEDPA, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court."  Williams, 529 U.S. at 391.  In order to satisfy Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.  466 U.S. at 687; Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (explaining that to establish ineffective assistance of counsel, a defendant "must show both deficient performance and prejudice.") (citation omitted).  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688.  This standard of review is deferential.  Id.

Even where the errors committed by counsel were unreasonable, the habeas petitioner must still show deficient performance, i.e., prejudice.  See Rainey v. Varner, 603 F.3d 189, 197-98 (3d Cir. 2010).  "To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

## IV.    DISCUSSION

Following the Court's finding that Petitioner's claim with respect to the Brady issue is unavailable for federal habeas review, Petitioner's habeas corpus petition asserts four remaining claims concerning ineffective assistance of counsel: (1) failure to request accomplice liability instruction; (2) failure to object to co-conspirator hearsay; (3) failure to object to admission of "other bad acts" evidence; and (4) cumulative error.[5]  Each of these claims is addressed in turn.

### A.    **Failure to Request Accomplice Liability Instruction**

Petitioner asserts that his trial counsel erred by failing to request an instruction on accomplice liability consistent with the Pennsylvania Supreme Court's decision in Commonwealth v. Huffman, 638 A.2d 961 (Pa. 1994).  In Huffman, the Pennsylvania Supreme Court held that an instruction as to accomplice liability was a harmful error because it did not specifically instruct that in order for a defendant to be found guilty of first degree murder, he himself must have had the specific intent to kill.  Id. at 963-64.

Petitioner contends that the failure to request an

---

[5]    The Court's November 23, 2009 Memorandum disposed of Petitioner's claim based on a Brady violation asserted in his habeas petition.  See Johnson, 671 F. Supp. 2d at 669-72.

accomplice liability instruction represents error because in order for him to be found guilty of murder he must have had the specific intent to kill, and because the trial court failed to instruct the jury that this specific intent to kill cannot be imputed to him based on Morales' actions.  In other words, Petitioner argues that if the jury was presented with an accomplice liability instruction, it could have elected to find that only Morales had a specific intent to kill and would have made clear that Morales' intent to kill cannot be transferred to him.

The Pennsylvania Superior Court addressed Petitioner's argument and found that the failure of Petitioner's counsel to request an accomplice instruction did not constitute ineffective assistance of counsel.  In accordance with § 2254(d) and the Supreme Court's decision in Williams v. Taylor, this conclusion must be reviewed to determine whether it is (1) "contrary to" or an "unreasonable application" of established Federal law; or (2) an unreasonable determination of the facts based on the evidence presented.  See 28 U.S.C. § 2254(d); Duncan, 256 F.3d at 196.

The Superior Court's conclusion that counsel was not ineffective was based on the finding that the evidence presented did not provide a basis to request an accomplice liability instruction, i.e., counsel cannot be ineffective for failure to raise a meritless issue.  The Superior Court's conclusion was

based on the fact that sufficient evidence of record established
that Petitioner acted as a principal, rather than an accomplice,
in Martinez's homicide.  The Superior Court reasoned:

> The evidence adduced at trial established that the victim
> suffered four separate gunshot wounds, three in the head
> and one in the arm.  Expert testimony established that
> two of the gunshot wounds to the head, one in the back of
> the head and one in the front of the head, were fatal.
> The evidence further established that appellant shot the
> victim three times, then fled on foot.  Morales circled
> the block in his van and then fired another shot.  In
> light of this evidence, at least one shot fired by
> appellant had to have been fatal.

Commonwealth v. Johnson, No. 15 MDA 2002, at *6 (Pa. Super. Ct.
Jan. 8, 2003).  Thus, the Superior Court concluded that since the
evidence presented did not warrant an accomplice liability
instruction, it could not have been error for trial counsel to
fail to request one.  Id.

First, Petitioner claims that this conclusion was
contrary to established Federal law on the basis that when a jury
returns a general verdict of guilty, a court cannot presume that
a jury relied on the theory of the case accepted by the court.
In support of this proposition, Petitioner cites to Sandstrom v.
Montana, 442 U.S. 510 (1979), and Francis v. Franklin, 471 U.S.
307 (1985).  These cases are inapposite to the issue presented by
Petitioner.  Both Sandstrom and Franklin address the situation
where a jury was presented with a mandatory presumption
concerning criminal liability, and stand for the general
principle that when a case is submitted to the jury on

-14-

alternative theories, the unconstitutionality of any of the theories requires that the conviction be set aside.  See Sandstrom, 442 U.S. at 526 (collecting cases); see also Stromberg v. California, 283 U.S. 359, 367-69 (1931) (establishing that when there exists a reasonable possibility that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside).

Defendant further cites to the Third Circuit's decision in Laird v. Horn, 414 F.3d 419 (3d Cir. 2005), in support of his argument that the Pennsylvania Superior Court erred in failing to give the accomplice liability instruction.  Laird is distinguishable from the instant case.  In Laird, the Third Circuit found that it was reversible error for the trial court to give a general accomplice liability instruction that a defendant could be guilty as an accomplice without specifying that the accomplice need to have the specific intent to kill in order to be found guilty of first degree murder.  There, the Third Circuit rejected the Commonwealth's argument that "the jury understood an 'accomplice' to first-degree murder must have the specific intent to kill required for a conviction of that crime."  Id. at 426. In contrast, the instruction given here (as set forth below) did not give a misleading instruction that an accomplice could be convicted of first degree murder without a specific intent to kill.  Petitioner fails to articulate how the holding in Laird

applies to the instant case.

The Commonwealth responds that the Pennsylvania Superior Court's conclusion was not contrary to Federal law because the jury instruction given needed only to conform to the evidence presented, and that here, the evidence of record demonstrated that Petitioner acted as a principal, and not an accomplice, in Martinez's murder.

Petitioner's contention that an unconstitutional jury instruction cannot be absolved based on a court's finding that the jury may not have relied upon the unconstitutional instruction in adjudicating guilt is correct as a general principle. Petitioner fails to recognize, however, that his reliance on this general principle is misplaced here. In this case, the Superior Court did not provide an unconstitutional instruction on accomplice liability and then provide some post hoc reasoning that the jury did not rely on the infirm instruction. Rather, the Pennsylvania Superior Court correctly examined whether there was a basis for the accomplice liability instruction in the first instance. The relevant question is whether the instruction given conforms with the evidence presented at trial.

Here, the Pennsylvania Superior Court clearly articulated the standard for an accomplice jury instruction and the factual basis for its conclusion that such an instruction was

not warranted under the circumstances.

Regardless of whether a request for a specific instruction is made by a party, a trial court is obligated to charge the jury in a manner supported by the evidence. See Commonwealth v. Harper, 660 A.2d 596, 598 (Pa. Super. Ct. 1995) (citing Commonwealth v. Donahue, 630 A.2d 1238, 1247 (Pa. Super. Ct. 1993) and Commonwealth v. Danzy, 310 A.2d 291 (Pa. Super. Ct. 1973)). When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. Commonwealth v. Wright, 961 A.2d 119, 145 (Pa. 2008); Commonwealth v. Carson, 913 A.2d 220, 255 (Pa. 2006). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." Commonwealth v. Prosdocimo, 578 A.2d 1273, 1274 (Pa. 1990). A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury. Wright, 961 A.2d at 145.

Under Pennsylvania law, first-degree murder requires the specific intent to kill, and that mens rea is also required of accomplices and co-conspirators. See 18 Pa. C.S. § 2502(a); Smith v. Horn, 120 F.3d 400, 410 (3d Cir. 1997) (citing Huffman, 638 A.2d 961). Accomplice liability requires evidence that the

person: (1) intended to aid or promote the substantive offense; and (2) actively participated in that offense by soliciting, aiding, or agreeing to aid the principal. Commonwealth v. Rega, 933 A.2d 997, 1014 (Pa. 2007). In contrast, a principal is the perpetrator who actually commits the crime. Commonwealth v. Parmer, 70 A.2d 296, 297 (Pa. 1950). Furthermore, "[s]pecific intent to kill can be proven by the use of a deadly weapon upon a vital part of the body." Commonwealth v. May, 656 A.2d 1335, 1340 (Pa. 1995) (citing Commonwealth v. Bricker, 326 A.2d 279 (Pa. 1974)).

Here, the trial court elected not to treat Petitioner as an accomplice and instructed the jury that:

> When deciding whether the Defendant had a specific intent to kill, you should consider all the evidence regarding his words and conduct and the attending circumstances that may show his state of mind.

> If you believe that the Defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the Defendant had the specific intent to kill.

(Trial Tr. 724-25, July 13, 1998.)

The proper question before the Court is whether the instruction given was warranted by the evidence in the first instance. The Pennsylvania Superior Court clearly articulated the evidence it relied upon in concluding that Petitioner fired at least one shot that struck Martinez's head. The presentation of this evidence was sufficient to warrant an instruction that

-18-

Petitioner acted as a principal and that the jury could infer that he had a specific intent to kill, which is conveyed clearly by the charge to the jury. Therefore, Petitioner has failed to show that the Pennsylvania Superior Court's conclusion that an accomplice jury instruction was not warranted and that the instruction given was not constitutionally defective was either contrary to or an unreasonable application of Federal law.

Second, Petitioner raises an issue with respect to the factual determination made by the Pennsylvania Superior Court with respect to whether an accomplice liability instruction was required. Petitioner contests the Superior Court's conclusion that Petitioner qualified only as a principal on the basis that Cintron testified that she overheard Petitioner state that he shot Martinez twice and not three times, and therefore neither of the bullets he fired may have struck Martinez in the head. Petitioner cites to the following exchange.

> Q: Did [Petitioner] say how many times he shot [the victim], if you remember?
> A: He told Tyhir [Biggs] twice.

(Trial Tr. 289, July 9, 1998.) Petitioner claims that this single factual statement contradicts the Superior Court's holding that at least one shot fired by appellant had to have been fatal.

Under section 2254(e)(1), factual findings of a state court are entitled to a presumption of correctness and this presumption can only be overcome where a habeas petition presents

clear and convincing evidence to the contrary. <u>See</u> 28 U.S.C. §
2254(e)(1). Here, a single potential inconsistent statement
raised during trial testimony does not qualify as the clear and
convincing evidence needed to overcome the Pennsylvania Superior
Court's finding that the evidence of record supported the
conclusion that since Morales only fired one shot, one of the
shots to the head of Martinez must have been fired by Petitioner.
Therefore, there is no basis to overturn the finding of the
Pennsylvania Superior Court on this point. This cannot be said
to constitute an "unreasonable determination of the facts" as
required by section 2254(d)(2).

Based on these conclusions, the Pennsylvania Superior
Court found that no accomplice liability instruction was
warranted by the evidence presented, and therefore counsel for
Petitioner could not have been ineffective for failing to request
such an instruction. The Pennsylvania Superior Court's legal
conclusions that an accomplice liability instruction was not
warranted by the evidence and that failure to request such an
instruction did not constitute ineffective assistance of counsel
are not contrary to Federal law. As Petitioner has presented no
error of law or fact of the Pennsylvania court's rejection of
this issue, Petitioner's claim will be dismissed.

B. **<u>Failure to Object to Co-Conspirator Hearsay</u>**

Petitioner asserts a claim for ineffective assistance

of counsel based on the failure to object to the admission of hearsay statements made by co-defendant Morales in violation of his Sixth Amendment right under the Confrontation Clause. The statements in question were made by Morales to Robles when Morales went to Robles' home following the murder of Martinez. Cintron, Robles' girlfriend, testified as to the substance of the exchange as follows:

> [Morales], came to the house and he told Tyhir Biggs to go get [Robles]. [Morales] had asked [Robles] if he has - if Roderick Johnson had come to the house. [Robles] told him no. [Robles] then asked him why? [Morales] started to tell [Robles] what had happened. [Morales] told [Robles] that he and [appellant] had seen the guy that owed Shawn Bridges money. Then . . . they had seen him right . . . at the I.G.A. on Buttonwood Street and Schuykill Ave. Roderick Johnson had jumped out of the car and approached the guy and asked if he remembered him, that he owed Shawn Bridges $500. The guy started to run, and Roderick Johnson ran behind the guy and chased him to Barbey's Park; and Roderick Johnson shot the guy - shot the guy in the back.
>
> Then, after that, Roderick Johnson ran . . .
>
> When Roderick Johnson ran, then [Morales] had pulled up in the car. Richard Morales got out of the car, and he leaned over the guy and shot him in the head. He was showing [Robles] how he did this. I was sitting on the floor in the second floor hallway, and leaned over, looking into the living room floor . . . watching Richard Morales show George Robles how he shot the guy. After that, he left the house. I went back into the room.

Commonwealth v. Johnson, No. 15 MDA 2002, *7 (Pa. Super. Ct. Jan 8., 2003) (alterations in original).

Robles also testified at trial as to the statements made by Morales as follows:

[Robles]: Then after [appellant] left, then Richard
Morales came looking for [appellant].  So then I was
like, What happened? And he didn't want to tell me at
fist because he thought I didn't know.  And I said,
Look, [appellant] came here already, so you might as
well tell me what's going on

. . .

He came in.  After I explained to him that [appellant]
came here already and to let me know.  And I questioned
him on it, and he said, Yeah, it happened.  As a matter
of fact, I circled the block in the van, and I fired
another shot into the body to make sure he did the job
the job right.  He said, Where is he? Where is he? He
said he was going to try and find you and go to the club
[where appellant, Morales, and Shawn Bridges worked].
So he said, All right then.  And he left in the van.

(Id.) (alterations in original).

The trial court admitted these statements under the co-conspirator hearsay exception.  On review of Petitioner's habeas petition, the Pennsylvania Superior Court found that the trial court erred in admitting these statements as co-conspirator hearsay because they were not so closely connected to the commission of the substantive offense that they may reasonably be considered part of a continuing course of criminal conduct emanating from the substantive offense.  See Commonwealth v. Cull, 656 A.2d 476, 482 (Pa. 1995).  Since the Pennsylvania Superior Court found that these statements were inadmissible under the co-conspirator exception and trial counsel did not have a reasoned trial strategy for failing to object, the Pennsylvania Superior Court found that the deficient performance prong under

-22-

_Strickland_ was satisfied.[6]  However, the Pennsylvania Superior

Court found that the ineffectiveness claim failed because

Petitioner could not show prejudice on the basis that the failure

to object constituted harmless error.  The Pennsylvania Superior

Court adopted the finding of the PCRA court that the wrongly

admitted testimony was cumulative of other evidence, and

therefore harmless.

Petitioner asserts that the Pennsylvania Superior

Court's finding was contrary to Federal law with respect to its

harmless error analysis.  Petitioner contends that because the

admission of these co-conspirator statements violated his right

under the Confrontation Clause, the error should not be deemed

harmless.

As an initial matter, the Commonwealth, for the first

---

[6]     The Pennsylvania Superior Court actually analyzed the
ineffective assistance of counsel claims under the Pennsylvania
state standard for ineffective assistance established in
_Commonwealth v. Pierce_, 527 A.2d 973, 975 (Pa. 1987).  However,
both the Pennsylvania Supreme Court and the Third Circuit Court
of Appeals have recognized that the standard for ineffective
assistance of counsel under Pennsylvania law-which the state
courts applied here-is the same as the _Strickland_ standard.  _See_
_Commonwealth v. Tedford_, 960 A.2d 1, 12 (2008) (citing _Pierce_,
527 A.2d at 975 (adopting U.S. Supreme Court's holding in
_Strickland_)); _Boyd v. Waymart_, 579 F.3d 330, 334 n.2 (3d Cir.
2009) (recognizing that the _Pierce_ standard and _Strickland_
standard are uniform; _Werts v. Vaughn_, 228 F.3d 178, 204 (3d
Cir.2000) (finding that the Pennsylvania standard is "not
contrary to" the _Strickland_ test).  Therefore, for the purposes
of simplicity and clarity, the Court will refer only to the
_Strickland_ standard.

time at oral argument,[7] raised the issue that Petitioner's asserted Confrontation Clause claim was procedurally defaulted because it was not ruled upon the Pennsylvania state courts. Pursuant to the AEDPA, a habeas petitioner must "fairly present" a federal constitutional claim in order such claim to be available for federal habeas review.  See 28 U.S.C. § 2254(b). In order to "fairly present" his claim, a prisoner must present in state court the factual and legal substance of his federal claim, in a manner that puts the state court on notice that a federal claim is asserted.  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 6 (1982)).

The state court's consideration of a petitioner's federal Constitution claim is not conclusive as to whether the claim was exhausted at the state level.  Even if the state court does not consider the claim, it is still exhausted if the state court had the opportunity to address it.  Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007) (citing Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989)).  Thus, here it is not determinative that the Pennsylvania courts did not address Petitioner's claim as a Confrontation Clause violation, so long as Petitioner presented

---

[7]     In fairness, at oral argument was the first time that Petitioner clearly articulated that his claim for a violation of the right to confrontation implicated Bruton v. United States, 391 U.S. 123 (1968).

the claim as such, i.e., giving the state court an opportunity to consider it.

To fairly present his federal claim, petitioner may employ several methods: (1) reliance upon pertinent federal cases; (2) reliance upon state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. McCandless, 172 F.3d at 260 (citing Evans v. Court of Common Pleas, DE County, PA., 959 F.2d 1227 (3d Cir. 1992) (articulating "fair presentation" factors)).

Here, the Pennsylvania Superior Court summarized Petitioner's claims as follows: "Appellant was denied effective assistance of counsel and the due process rights and right of confrontation of witnesses, as guaranteed by the Pennsylvania and United States Constitutions, when trial counsel (a) failed to preserve objections to the admission of non-co-conspirator statements." Commonwealth v. Johnson, No. 15 MDA 2002, at *5 (Pa. Super. Ct. Jan. 8, 2003).

In his brief to the Superior Court, Petitioner presented the following argument concerning the admission of Morales' statements:

Hence, the admission of these statements violated not only traditional hearsay rules but, separately,

-25-

appellant's state and federal right of confrontation. Where a statement is not admissible as a firmly-rooted hearsay exception, it is presumptively unreliable; in such circumstances its use deprived an accused of the constitutional right to confront witnesses. <u>Lilly v. Virginia</u>, U.S., 199 S. Ct. 1887 (1999).

(Petr.'s Brief on Appeal From The Denial Of P.C.R.A., 18, March 2002.)

In essence, Petitioner's argument to the Pennsylvania state court was that the mischaracterization of Morales' statement as co-conspirator hearsay violated his right under the Confrontation Clause because he was not permitted to cross-examine Morales concerning the inculpatory statements. Under the circumstances, it appears that Petitioner has met the minimum standard necessary to show that he "fairly presented" his <u>Bruton</u> claim in the state court in order to avoid procedural default.

This conclusion, however, is not free from doubt. Merely citing to the Sixth Amendment Confrontation Clause does not serve as a blanket presentment of all issues which can arise in the context of the Confrontation Clause. In fact, the admission of a non-defendant co-conspirator statement which may raise concerns under the Confrontation Clause, may not implicate <u>Bruton</u> at all.

Here, however, giving Petitioner the benefit of the doubt, it appears that Petitioner asserted his <u>Bruton</u> claim with sufficient particularity to be deemed "fairly presented" to the Pennsylvania state courts. Petitioner's argument with respect to

Morales' statements expressly invoked the Sixth Amendment Confrontation Clause, alleged a pattern of facts, i.e., admission of a conspirator confession, that falls within the mainstream of constitutional litigation as potentially implicating Bruton, and cited to the Supreme Court's decision in Lilly v. Virginia, 527 U.S. 116 (1999), which discussed Bruton and its progeny.  See McCandless, 172 F.3d at 260.  Therefore, the Court concludes that based on the limited record available, that Petitioner has fairly presented his Confrontation Clause claim to the Pennsylvania state courts in a sufficient manner to avoid procedural default.

Petitioner asserts that the conclusion reached by the Pennsylvania Superior Court is contrary to Federal law on two grounds: (1) the state courts failed to recognize that a violation of the Confrontation Clause had occurred through the admission of Morales' statements; and (2) the Superior Court incorrectly found that counsel's failure to raise the Confrontation Clause issue was not prejudicial.  These issues are addressed in turn.

1.   Confrontation Clause Violation

Petitioner argues that the Superior Court's decision was contrary to Federal law because it failed to recognize that the admission of Morales' statements violated Petitioner's Sixth Amendment right under the Confrontation Clause.  The Superior Court expressly found that Morales' statements did not qualify

under the co-conspirator hearsay exception, however, the Superior Court did not address specifically the effect of these incorrectly admitted statements with respect to Petitioner's Sixth Amendment rights.

Petitioner asserts that the admission of Morales' statements violated his Sixth Amendment rights under the Supreme Court's decision in <u>Bruton v. United States</u>, 391 U.S. 123 (1968). The Sixth Amendment to the United States Constitution, and specifically its Confrontation Clause, guarantees criminal defendants the right to confront the witnesses against them. In <u>Bruton</u>, the Supreme Court explained that a defendant is denied his right to confront witnesses against him when a prosecutor presents a co-defendant's confession implicating the defendant at a joint trial and the co-defendant does not testify because the defendant has no opportunity to cross-examine. 391 U.S. at 126. Subsequent to <u>Bruton</u>, the Supreme Court held that admission of a non-testifying co-conspirator's statement against a defendant does not offend the Confrontation Clause as long as the statement satisfies the co-conspirator exclusion under the relevant rules of evidence. <u>See</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 182-83 (1987).

Relying on <u>Bruton</u>, Petitioner argues that because Morales' statements were not made during the commission of the conspiracy or in furtherance of the conspiracy, and thus do not

fit within the hearsay exception, the admission of these statements violated <u>Bruton</u>.  Based on the findings of the Pennsylvania Superior Court that these statements do not fit within the co-conspirator hearsay exception, <u>Bruton</u> on its face would apply.

Petitioner fails to recognize that <u>Bruton</u> does not apply here for an independent reason, namely Morales' statements were not admitted during a joint trial of Morales and Petitioner. In <u>Bruton</u>, two defendants were accused of participating in the same crime and both were tried jointly.  391 U.S. at 124. One defendant confessed, naming and incriminating the other defendant.  <u>Id.</u>  The trial judge instructed the jury only to consider the confession against the confessing defendant.  <u>Id.</u> at 125.  The Supreme Court, however, found that a Confrontation Clause violation, caused by the admission of a nontestifying codefendant's "powerfully incriminating" confession, is not necessarily cured by a limiting instruction.  <u>Id.</u> at 135-36. Therefore, <u>Bruton</u> is based on the rationale that where the "powerfully incriminating extrajudicial statements" of one co-defendant would be admitted against another co-defendant, without the opportunity of cross-examination, then effective confrontation is not possible in spite of a limiting instruction that is given to the jury.  <u>Id.</u>

The Third Circuit in <u>Johnson v. Tennis</u> explained that

the "basis of <u>Bruton</u> was that even a carefully instructed jury cannot be expected to disregard completely the incriminating confession of a non-testifying codefendant."  549 F.3d 296, 300 n.4 (3d Cir. 2008); <u>see also</u> <u>Bruton</u>, 391 U.S. at 135-36 ("[T]here are some contexts in which the risk that the jury will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.").  In light of this rationale, the Supreme Court has found that where a potential for <u>Bruton</u> evidence exists, the special prejudice that occurs can be eliminated by holding separate trials.   <u>See</u> <u>Gray v. Maryland</u>, 523 U.S. 185, 192-95 (1998) (stating that because the use of an accomplice's confession "creates a special, and vital, need for cross-examination," a prosecutor desiring to offer such evidence must comply with <u>Bruton</u>, hold separate trials, use separate juries, or abandon the use of the confession); <u>Lilly v. Virginia</u>, 527 U.S. 116, 128 (1999) (recognizing that <u>Bruton</u> applies when a co-defendant confession has been admitted into evidence in a <u>joint</u> <u>trial</u>) (emphasis added); <u>see also</u> <u>Tennis</u>, 549 F.3d at 300-01 (holding that <u>Bruton</u> does not apply to a bench trial because

<u>Bruton</u> deals only with situations where a jury would be unable to apply a limiting instruction concerning a co-defendant's confession during a joint trial); <u>United States v. Hill</u>, 901 F.2d 880, 883 (10th Cir. 1990) (noting that if co-defendants are tried separately, "<u>Bruton</u> problems will never arise."); <u>United States v. Cirrincione</u>, 780 F.2d 620, 632 (7th Cir. 1985) ("One way to avoid <u>Bruton</u> problems is to conduct separate trials, so the confession may be used against the declarant without adverse effects on co-defendants."); <u>United States v. Morris</u>, No. 07-20, 2008 WL 5188826, at *10 (W.D. Pa. Dec. 8, 2008) (noting that the remedy for a potential <u>Bruton</u> violation is that a co-defendant should be granted a separate trial); <u>United States v. Sigler</u>, 559 F. Supp. 2d 906, 914 (N.D. Ill. 2008) ("One of the common remedies for a potential <u>Bruton</u> problem-which arises when one defendant has given a statement inculpating the other-is to order separate trials. That is what the trial court did here. . . In short, unlike <u>Bruton</u>, this case does not involve the admission against a defendant of a jointly tried co-defendant's statement that is concededly hearsay. Rather, it involves admission of the fact (and arguably part of the contents) of a statement by a separately tried co-defendant, for what is claimed to be a proper, non-hearsay purpose."); <u>United States v. Grullon</u>, 482 F. Supp. 429, 431 (E.D. Pa. 1979) (granting motion to sever where introduction of defendants' post-arrest statements in

consolidated trial would jeopardize codefendants' rights under
Bruton and result in prejudice).

Here, because Petitioner and Morales were tried
separately, the admission of Morales' statements did not
implicate Bruton. Therefore, Petitioner's argument on this point
is inapposite to his Confrontation Clause claim.

To the extent that Petitioner asserts that the
admission of Morales' statements violated his Sixth Amendment
right under Crawford v. Washington, 541 U.S. 36 (2004), this
claim is also without merit. In Crawford, the Supreme Court held
that "[t]estimonial statements of witnesses absent from trial"
can be admitted under the Confrontation Clause "only where the
[out-of-court] declarant is unavailable, and only where the
defendant has had a prior opportunity to cross-examine" the
declarant. Crawford, 541 U.S. at 40. The decision in Crawford,
however, applies only to out-of-court statements that are
"testimonial" in nature. See id. at 68 ("Where nontestimonial
hearsay is at issue, it is wholly consistent with the Framers'
design to afford the States flexibility in their development of
hearsay law-as does Roberts [Ohio v. Roberts, 448 U.S. 56, 100
(1980)], and as would an approach that exempted such statements
from Confrontation Clause scrutiny altogether.").

In Crawford the Supreme Court eschewed a comprehensive
definition of what qualifies as "testimonial" evidence. Id. The

-32-

Court in <u>Crawford</u> explained that "testimony" is typically in the form of "[a] solemn declaration or affirmation made for the purpose of establishing or providing some fact." <u>Id.</u> at 51 (internal quotation marks and citations omitted).  The Court did establish that, at a minimum, "testimonial" evidence includes prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations.  <u>Id.</u> at 68. In contrast, the <u>Crawford</u> decision makes clear that casual statements to an acquaintance are not testimonial.  <u>Id.</u> at 51.

Therefore, under <u>Crawford</u>, the statements made by Morales to Robles concerning Martinez's homicide could not be considered testimonial in nature as they represented merely informal statements among acquaintances.  <u>See</u> <u>generally</u> <u>Horton v. Allen</u>, 370 F.3d 75, 84 (1st Cir. 2004) (finding that informal statements made by co-conspirator during a private conversation were nontestimonial and thus outside the scope of <u>Crawford</u> because the statements were not made under circumstances in which an objective person would reasonably believe would be available for use at a later trial); <u>Williams v. SCI-Huntingdon</u>, No. 02-7693, 2004 WL 2203734, at *11 n.7 (E.D. Pa. Sept. 30, 2004) (recognizing that an off-hand mark to an acquaintance is outside the scope of <u>Crawford</u> and does not violate the Confrontation Clause); <u>United States v. Vaghari</u>, No. 08-693-01, 2009 WL 2245097, at *8 (E.D. Pa. July 27, 2009) (finding that informal e-

mails from alleged co-conspirators are not "testimonial" in nature and therefore are not within the purview of Crawford).

As to nontestimonial statements, the Confrontation Clause does not preclude their admission if they are subject to a firmly rooted hearsay exception or bear an adequate indicia of reliability. Albrecht v. Horn, 485 F.3d 103, 135 (3d Cir. 2007); United States v. Hendricks, 395 F.3d 173, 179 (3d Cir. 2005) (addressing Roberts). Neither of the parties, nor the Pennsylvania state courts, considered whether these nontestimonial statements have sufficient indicia of reliability or would be deemed to qualify as a firmly rooted hearsay exception in order to comply with the Confrontation Clause. It is not necessary for the Court to make that determination here, because even assuming that these nontestimonial statements were found to violate Petitioner's Confrontation Clause rights, the harmless error test would apply. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (stating that errors under the Confrontation Clause are subject to harmless error analysis); United States v. Hardwick, 544 F.3d 565, 574 (3d Cir. 2008) (recognizing that the harmless error test applies to violations of the Confrontation Clause). For the reasons discussed more fully below, since Morales' statements were cumulative in nature, any prejudicial effect of the incorrectly admitted statements would be negated and Petitioner's conviction need not be set aside.

2.   Finding of Prejudice

Petitioner claims that the Pennsylvania Superior Court's conclusion that failure to raise the Confrontation Clause issue was not prejudicial under Strickland is contrary to Federal law.[8]  Assuming arguendo that Petitioner has established a Confrontation Clause violation, any resulting error was harmless.

Following the Supreme Court's decision in Fry v. Pliler 551 U.S. 112, 121-22 (2007), this Court must perform its own harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619 (1993), rather than review the state court's harmless error analysis under the AEDPA standard.  See Bond v. Beard, 539 F.3d 256, 275-76 (3d Cir. 2008) (explaining that Fry instructs federal courts to conduct an independent harmless error analysis).  In Brecht, the Supreme Court explained that an error will be deemed harmless where it did not have "substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled

_____

[8]    As explained above, although the Pennsylvania Superior Court actually reached its decision under the Pennsylvania standard established by Pierce, because the Pierce standard and Strickland standard are recognized as equivalent, the Court refers only to the Strickland standard for purposes of clarity. See Boyd, 579 F.3d at 334 n.2 (recognizing that the Pierce standard and Strickland standard are uniform); Werts, 228 F.3d at 204 (finding that the Pennsylvania standard is "not contrary to" the Strickland test).

to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." Id. (quotation marks omitted). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (quotation marks omitted).

Petitioner argues that the admission of a co-conspirator cannot be deemed harmless error. In support of this argument, Petitioner cites to Cruz v. New York, 481 U.S. 186 (1987), for the proposition that where a co-conspirator's admission is cumulative or "interlocking" with a defendant's own admission, then prejudice results.

Petitioner misreads the holding of the Supreme Court in Cruz. The decision in Cruz resolved a split of authority as to whether a Bruton violation could occur with respect to an "interlocking" confession as well as a contradictory confession. See id. at 190-93 (explaining that the Court was resolving the conflict between the plurality opinion of Parker v. Randolph, 442 U.S. 62 (1979), that Bruton did not apply to an interlocking confession with Justice Blackmun's view that Bruton applied to both types of confession). It is true that Justice Scalia, speaking for the majority in Cruz, recognized that a corroborating co-conspirator confession can be more damaging than

a contradictory co-conspirator confession, however, this conclusion was limited to consideration of whether <u>Bruton</u> should apply at all to an interlocking confession and not whether admission of such an interlocking confession would <u>per se</u> qualify as harmful error. <u>See</u> <u>id.</u> at 192-93 ("Quite obviously, what the 'interlocking' nature of the codefendant's confession pertains to is not its harmfulness but rather its reliability: If it confirms essentially the same facts as the defendant's own confession it is more likely to be true. Its reliability, however, may be relevant to whether the confession should (despite the lack of opportunity for cross-examination) be admitted as evidence against the defendant . . . .").

Contrary to Petitioner's assertion, <u>Cruz</u> does not stand for the principle that admission of an interlocking confession standing alone necessitates a finding of harm. Rather, as explained above, courts employ an independent harmless error analysis in order to determine whether a <u>Bruton</u> violation warrants a retrial regardless of whether the co-conspirator confession is contradictory or corroborating. <u>See</u> <u>Bond</u>, 539 F.3d at 275-76 (recognizing that harmless error analysis is applicable to a <u>Bruton</u> claim) <u>United States v. Richards</u>, 241 F.3d 335, 341 (3d Cir. 2001) (same). Furthermore, courts consistently have found that a co-conspirator admission which violates <u>Bruton</u> constitutes harmless error where sufficient other evidence of

guilt is present in the record.  See, e.g., United States v.
Coleman, 349 F.3d 1077, 1086-87 (8th Cir. 2003) (holding that
erroneously admitted evidence under Bruton is harmless where the
evidence is "merely cumulative of other overwhelming and largely
uncontroverted evidence properly before the jury.") (quoting
Brown v. United States, 411 U.S. 223, 231 (1973) (harmless error
despite Bruton violation where the testimony erroneously admitted
was merely cumulative)); United States v. Lage, 183 F.3d 374, 388
(5th Cir. 1999) (where incorrectly admitted statements merely
corroborated other uncontroverted testimony, any Bruton error
arising from the admission was harmless); United States v.
Gillam, 167 F.3d 1273, 1277 (9th Cir. 1999)  (finding Bruton
error harmless beyond a reasonable doubt where "the testimony
erroneously admitted was merely cumulative of other overwhelming
and essentially uncontroverted evidence properly admitted"); Fogg
v. Phelps, 579 F. Supp. 2d 590, 610 (D. Del. 2008) (holding that
Bruton violation stemming from admission of co-conspirator
statement constituted harmless error because it was merely
cumulative of the other evidence properly admitted at trial).

        Based on the available record here, any error in
admitting Morales' statements was harmless under Brecht.
Although the admission of Morales' statements implicates
questions concerning Petitioner's Sixth Amendment rights, the
Commonwealth presented such extensive evidence of Petitioner's

guilt that any error cannot be found to have had a substantial and injurious effect in determining the jury's verdict. The evidence in this case was more than sufficient to support the jury's verdict without inclusion of Morales' statements. At trial, several witnesses testified as to the direct participation of Petitioner in the murder of Martinez. Both Robles and Velazquez testified that Petitioner recounted his role in the homicide to them independently. These accounts are corroborated by Cintron's testimony that she overheard Petitioner admit his direct role in the shooting to Biggs. Furthermore, Petitioner's statements to Robles, Velazquez and Biggs (as testified to by Cintron) are consistent with the independent eye witness accounts of Martinez's murder from the night of November 1, 1996. The Commonwealth also offered testimony of the coroner's review of Martinez's homicide that was consistent with the accounts of the witnesses presented.

The overwhelming evidence presented, most critically Petitioner's own admissions of his role in the shooting, leaves no basis for a "grave doubt" as to the harmlessness of the error. Thus, as any error was harmless, Petitioner cannot assert a cognizable habeas claim for ineffective assistance of counsel on this basis.

C. **Failure to Object to Admission of "Other Bad Acts" Evidence**

Petitioner contends that the testimony of Velazquez,

Petitioner's then-girlfriend, relaying Petitioner's

characterization of himself as a "hitman" constitutes

inadmissible prior "bad acts" evidence, such that the failure to

object to this evidence rose to the level of ineffective

assistance of counsel.

During direct examination, Velazquez testified as

follows:

> Q: And after November 1 of 1996, that Friday evening,
> did you have a conversation with your then boyfriend,
> Roderick Johnson, about the shooting at Barbey's
> Playground.
> A: We was [sic] watching the news, the Berks County
> news, and he told me that he was the one who had shot
> Jose Martinez.
> Q: What else did he say?
> A: He also told me that he was a hit man.
> Q: Anything else?
> A: Not that I remember right now.

(Trial Tr. 158-59, July 8, 1998.)

During re-direct examination, the Commonwealth questioned

Velazquez concerning a statement made to police, and Velazquez

read the following statement into the record:

> Roddy said, Can I trust you? I looked at him, and he
> told me that he was the one that shot the guy at
> Barbey's. <u>Roddy told me that he was a hit man, and
> that's what he does</u>.

(<u>Id.</u> at 196) (emphasis added).

The Pennsylvania Superior Court adopted the PCRA

court's conclusion that this type of evidence did not

qualify as "other bad acts" evidence under Pennsylvania Rule of Evidence 404(b). Rather, both the PCRA Court and the Superior Court found that Petitioner's statement should be analyzed as an exception under the hearsay rule rather than as character evidence. Relying on Pennsylvania Rule of Evidence 803(25), the PCRA Court and the Superior Court found that Petitioner's statement constituted an extra-judicial admission by a defendant that is admissible even though it contains an admission of guilt.

First, it is well settled that claims asserting a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law"), Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997) ("'it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."); White v. Carroll, 416 F. Supp. 2d 270, 282 (D. Del. 2006). Thus, Petitioner cannot use the instant habeas petition to challenge the Pennsylvania state courts interpretation of the Pennsylvania

Rules of Evidence.  See, e.g., Roulhac v. Lawler, No. 08-
5124, 2009 WL 5910245, at *5 (E.D. Pa. Oct. 29, 2009)
(holding that a challenge of the trial's court evidentiary
ruling under the Pennsylvania Rules of Evidence is not
cognizable on federal habeas review); Swainson v. Varner,
No. 99-6480, 2002 WL 241024, at *9 (E.D. Pa. Feb. 19, 2002)
("It is not the court's role on habeas review to decide
whether a state trial judge's decision to admit evidence
pursuant to state evidentiary rules was proper.").
Therefore, to the extent that Petitioner asserts that the
Pennsylvania courts incorrectly admitted these statements as
extra-judicial admissions under the Pennsylvania Rules of
Evidence, such a claim is barred from federal habeas review.

        Second, in an attempt to couch his claim as one
for federal habeas review, Petitioner asserts that the
admission of this statement violated his right to due
process, and therefore the failure to object to such
evidence constitutes ineffective assistance of counsel.  As
explained above, claims based on state court evidentiary
errors cannot warrant habeas relief unless the petitioner
demonstrates that the error was so pervasive that he was
denied the fundamental right to a fair trial.  See Estelle,
502 U.S. at 67-68; Keller v. Larkins, 251 F.3d 408, 413 (3d
Cir. 2001) (recognizing that in order to show that

evidentiary error amounted to a due process violation under habeas review, a petitioner must show that the error is of "such magnitude as to undermine the fundamental fairness of the entire trial").

Based on the available record, even if the trial court did erroneously admit Velazquez's testimony concerning Petitioner's statements to her, Petitioner has failed to demonstrate that the admission of that testimony rendered his trial fundamentally unfair. Here, Petitioner's statement that he was a "hitman" and "that's what he does" was independent of Petitioner's admission that he himself shot Martinez. In other words, the remaining unchallenged portion of Petitioner's statement admitted that he had committed the murder of Martinez for which he was on trial, irrespective of whether his classification of himself as a "hitman" suggested to the jury that he had committed other non-related homicides in the past. When viewed in context, it cannot be said that the admission of Petitioner's characterization of himself as a "hitman" rendered the trial fundamentally unfair in light of the corresponding confession given by Petitioner contemporaneous with that statement.

Furthermore, as explained above, a substantial amount of inculpatory evidence was admitted at trial

demonstrating Petitioner's guilt in Martinez's homicide.
Based on the entire record of available evidence, Petitioner
has failed to demonstrate that the admission of his vague
statement to Velazquez describing himself as a "hitman"
served to render his entire trial fundamentally unfair.  See
Keller, 251 F.3d at 413.  Therefore, as Petitioner's
asserted due process claim is meritless he cannot
demonstrate that his trial counsel was deficient in failing
to raise the issue.  In light of his failure to satisfy the
first prong of Strickland, Petitioner's claim will be
dismissed.

## D.   Cumulative Effect of All Errors

Petitioner's final claim is that the cumulative
effect of all of the errors at trial entitle him to habeas
relief.  The Third Circuit has pronounced that "[i]ndividual
errors that do not entitle a petitioner to relief may do so
when combined, if cumulatively the prejudice resulting from
them undermined the fundamental fairness of his trial and
denied him his constitutional right to due process."  Fahy
v. Horn, 516 F.3d 169, 205 (3d Cir. 2008) (quoting Albrecht
v. Horn, 471 F.3d 435, 468 (3d Cir. 2006).  Cumulative
errors will only be deemed not harmless where "they had a
substantial and injurious effect or influence in determining
the jury's verdict, which means that a habeas petitioner is

not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" Id. (internal citation omitted); see Brecht, 507 U.S. at 637. To demonstrate actual prejudice, Petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986). Where weighty evidence of guilt is in the record, even in spite of all of the petitioner's alleged errors, the cumulative error standard has not been met. Fahy, 516 F.3d at 205.

As explained above, the overwhelming evidence of guilt presented by the Commonwealth forecloses Petitioner's argument in favor of cumulative error. Here, the Commonwealth presented three witnesses, Robles, Cintron and Velazquez each of whom testified that Petitioner admitted his culpability in the shooting death of Martinez. In light of these uncontradicted admissions, Petitioner's argument that his alleged errors had a "substantial and injurious" effect on the jury's verdict fails.

## V. CONCLUSION

For the foregoing reasons, Petitioner has failed

to establish a cognizable habeas violation.  Therefore,
Petitioner's habeas corpus petition will be dismissed.  An
appropriate Order follows.